865 F.2d 1259
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
REPUBLICAN PARTY OF NORTH CAROLINA; Bruce Briggs; William
R. Sigmon; Marvin K. Gray; R. Howard Riddle; Lloyd
Fowler; Joe R. Wilson; R. Walter White; Edgar A.
Readling, Jr.; Frederic M. Gallagher; Ralph A. Walker,
Plaintiffs-Appellees,
v.
James G. MARTIN, Governor of North Carolina; the North
Carolina State Board of Elections; Robert N. Hunter, Jr.,
Chairman of North Carolina State Board of Elections; Thomas
A. Farr; William A. Marsh, Jr.; Ruth Turner Semashko;
June K. Youngblood, Defendants-Appellees,
The North Carolina Association of Black Lawyers, Appellant.
 No. 88-3862.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 12, 1988.
Decided: Dec. 15, 1988.
 
 Leslie Jane Winner (Ferguson, Stein, Watt, Wallas & Adkins, P.A.; Lacy H. Thornburg, James M. Wallace, Jr., Office of the Attorney General, on brief), for appellant.
 Marshall Hurley (C. Allen Foster, Patton, Boggs & Blow, on brief), for appellee.
 Before DONALD RUSSELL and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The North Carolina Association of Black Lawyers sought intervention in this action by which the Republican Party of North Carolina and individual voters who sometimes or always support Republican candidates for judicial office sought modification of North Carolina's procedures for the election of superior court judges.
 
 
 2
 On appeal from denial of the motion to intervene, we reverse.
 
 
 3
 This action came on the heels of one brought by black North Carolina voters to modify still earlier procedures for the election of North Carolina superior court judges. Alexander v. Martin, 86-1048 Civ. 5 (E.D.N.C.1987). It is well for us to begin at the beginning.
 
 
 4
 * North Carolina has long had a scheme for statewide election of its superior court judges. Each judge serves a given district, and there are nomination processes by which political parties in each district may nominate an aspirant for a vacant judgeship position in the district.
 
 
 5
 The nominees of such district processes, however, must run in a statewide general election. Because an overwhelming majority of North Carolina's voters are Democrats and nominees for judicial office usually have no statewide reputation, the nominees of the Democratic Party invariably prevail in the statewide general elections.
 
 
 6
 The black plaintiffs in Alexander apparently were unconcerned about the statewide general elections in which a Democrat nominee was substantially assured of election, but they were much concerned about the nomination process.
 
 
 7
 The Alexander case was settled by a consent decree upon adoption by the North Carolina General Assembly of new Chapter 509 of the Session Laws of 1987. That legislation redrew the judicial districts of the state. Their number increased from 34 to 70, and, by design, a number of districts were created in which there were black voting majorities. Chapter 509 also imposed a residency requirement upon the candidates seeking election to judicial offices in the districts.
 
 
 8
 The original plaintiffs in Alexander were black voters, but the North Carolina Association of Black Lawyers became a plaintiff by intervention. It is unclear here to what extent the NCABL contributed to the negotiation of the settlement in Alexander or the adoption by the legislature of Chapter 509, but it was one of the plaintiffs in Alexander, and it approved the settlement agreement.
 
 
 9
 The Republican plaintiffs in this case sought different objectives. They asked the court to terminate the system of conducting statewide general elections for district judicial officers and to substitute election in each judicial district. The Republican plaintiffs also asked that the residency requirement be abolished.
 
 II.
 
 10
 To obtain intervention as a matter of right under F.R.Civ.P. 24(a), the applicant must show (1) that it has an interest in the subject matter of the litigation, (2) that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, and, (3) that the interest is not adequately represented by the existing parties. C. Wright, A. Miller & M. Kane, 7C Federal Practice and Procedure, Sec. 1908 (1986). Newport News Shipbuilding and Drydock Company v. Peninsular Shipbuilders, 646 F.2d 117 (4th Cir.1981).
 
 
 11
 In denying intervention, the district court considered the claimed interest of the NCABL to be obtaining a judicial declaration that Chapter 509 of the Session Laws of 1987 is constitutional. The district court observed that the NCABL was not a participant in the electoral process by which superior court judges were elected. The district court thought that any interest the NCABL had in enforcement of the Voting Rights Act could be better asserted in a different context and that, meanwhile, it had no interest apart from that of the general public.
 
 
 12
 Here, the claimed interest is more particularized. The NCABL obtained what it appears to have wanted by the enactment of Chapter 509 and the settlement of the Alexander litigation. It was a party to the Alexander litigation, so it has a readily apparent interest in defending the remedial action obtained by it and its allies in that litigation. The plaintiffs seek removal of the residency requirement through a judicial declaration in this action; the NCABL seeks a rejection of the claim for relief asserted by the Republican plaintiffs.
 
 
 13
 The plaintiffs assert that the claimed interest is illusory. The Republicans seek an abolition of the statewide general election of superior court judges, and they contend that a substitution of general elections by districts would provide the NCABL with comparable protection now provided by the residency requirement.
 
 
 14
 We think that neither the Republican plaintiffs nor we should so circumscribe the asserted interest of the NCABL. The Association asserts that it wishes to present evidence supporting its claim of interest in preservation of the residency requirement, and one may readily see that a system of statewide general elections accompanied by a residency requirement better serves the interest of the NCABL.
 
 
 15
 As things now are, there is a basis for hope by interested blacks that, in a judicial district in which a minority of the voters are black but in which there is substantial Republican strength, a candidate with black support may win nomination in a Democratic primary. Any such nominee, flying the colors of the Democratic party, would be substantially assured of victory in a statewide general election. If the electorate were confined to the district, however, the chances of a Democratic nominee running against a well supported Republican nominee in a general election might well be slight.
 
 
 16
 The court now is simply in no position to declare that the asserted interest of the movant in preserving the residency requirement in the context of a statewide general election would give its interest no greater protection than a restriction of the suffrage to voters inside the district.
 
 
 17
 The district court also noted that this action is against the Governor of North Carolina and other state officials who, presumptively, will provide adequate representation of the interest of the NCABL.
 
 
 18
 This action is being defended by North Carolina's Attorney General, a Democrat.
 
 
 19
 We would not expect the Attorney General or the Republican Governor of North Carolina to act blindly in furtherance of partisan political objectives. We assume that each will act in what he perceives the best interest of all the citizens of North Carolina. At the moment, the Attorney General says that his litigative purpose is in general agreement with that of the NCABL, but he cautions that he can give no assurance that those objectives may not diverge. He professes an inability to determine whence this litigation might lead, and he disowns reliance upon the state as an adequate representative of the interest of the NCABL.
 
 
 20
 The position of the North Carolina Attorney General here substantially undercuts the observation of the district court.
 
 
 21
 Moreover, the doctrine of parens patriae may be properly invoked only by the state. It may not successfully be invoked by private parties over the state's disclaimer.
 
 
 22
 Under these circumstances, the case will be remanded with directions to permit the intervention of the NCABL as a party defendant.
 
 
 23
 REMANDED.